Next case is In Re Man Machine Interface Tech LLC. I would like to address three points at a time and make one correction for the record reserving five minutes for rebuttal. The three independent claims of the patent that is issued here today is shown on the visual aid that we provided. These claims have been examined and twice examined already. In addition, Mr. Singhal, the inventor, has licensed this patent. They've been twice examined, as you said, but this Japanese reference wasn't in the examination file, was it? That's correct, Your Honor. That's new. And that seems to have filled a hole that the Florin reference left with respect to the claims. Well, it's our position, of course, that it hasn't filled a hole. It's a Japanese patent. What was added in the reexamination? The cover? The first reexamination? The cover plate? No, the final one. The cover plate and an annular switch with four switches. Wasn't that what the Japanese reference added that wasn't in the Florin reference? Yes, certainly, Your Honor. Our position is that the Japanese reference is not a handheld device. It doesn't provide that. It doesn't provide that it is a phone switch. But those aspects of the claim are provided by Florin. I'm thinking about the 103 objection. Sure, Your Honor. Our position would be that it not being a handheld device, it being a stationary device, much like a number keypad that you'd put on a desktop, it wouldn't be held. It's not a remote control. It's tethered to the computer itself. It's 1982. It's before the mouse. But your discussion here is really focusing on the Japanese reference itself as opposed to Florin in view of the Japanese reference, right? Because the things that you're pointing out that are lacking in Japanese 634 are the very things that Florin would provide, right? The handheld, the thumb switch. Your Honor, the Florin reference is limited itself, but it is true that we are focusing on the fact that this particular keypad device in JP634, there's no reason to combine that with the Florin reference in order to render our client's indication obvious. That's the heart of it, I think, right? So you're not asking us to look at any objective indication on obviousness. You haven't raised that in your briefs. You're focusing just on the question of the motivation to combine, correct? Yes, Your Honor. It is a motivation to combine because at one point, the JP634 is referenced as a handheld device by the acting solicitor. But in reality, it is a desktop. Well, let's assume we completely agree with you on claim construction. And I've got some other questions about that later. But assume we completely agree with you on your claim construction arguments. You still have these two devices, one of which is admittedly not handheld, the other of which is. So one contains the electronic setup that ultimately you put into your handheld device. The other is a handheld device with the thumb switch. Why wouldn't there be a motivation to combine those two by one of ordinary skill in the art? Well, Your Honor, there is a long gap of many years between the 89882 device and our own client's invention. And our own client is the one that invented it, not anyone prior to that. I think the years of unmet need would fill that argument. But you don't argue objective indicia in your appellate brief. So you're just saying there wouldn't be a motivation to combine because it was old technology? Certainly it is old technology. It's a keypad. It's not something that would be considered by someone of ordinary skill in the art that might have flooring in his hands. It wouldn't go to something like that. There really isn't a long time gap. The Japanese patent was, what, 1982? And the priority date of your patent was 1995. It's not like we're talking about really ancient art. Well, and also there are many examiners here that had not brought up the JP634 is reflective on the fact that whether it would be relevant to one person of ordinary skill in the art. It precedes even the mouse age. It's a keypad. It's something you would actually touch with your fingers. It's not in the remote control field. Not that we pressed him out. But both references have a center button, if you will, with other buttons surrounding that center button. I mean, why wouldn't one of ordinary skill in the art have been motivated to, you know, starting with flooring and modify flooring to provide smoother movement by referring to the teachings of JP634? I just think that's hindsight reasoning. I mean, you're looking at our client's specification and claims, and then you're looking back at something that, you know, the first examiner never considered. And several licensees who've done their own due diligence before taking on licenses by our client have all looked at it. And only recently somebody come up with something like this. Although it is an annular button with a central button, it's something that's touched by the finger. It's really in some way it's perhaps replaced the number keypad where you might previously touch the two, the four, the six, and the eight to go up, left, right, and down. Here they've replaced it in the JP634 with the annular ring. But it's not in any way something that the members in a person of ordinary skill in the art in the handheld device field would look to. It's not a – it's nothing like a thumb switch. It's a finger keypad of some sort. Am I correct that this patent has expired? Yes, Your Honor. That's another issue is that I don't want to weigh my client's rights with respect to possibly some sort of term extension based on various delays at the patent office and on appeals. But, yeah, during the briefing of this appeal, the expiration date has passed. It's an interesting case. It's a CIP application based on a prior – prior date of 1995 prior to the switchover from the 17-year to the 20-year expiration dates. But – so there's no actual term extension calculation on the face of the patent itself. But it's certainly – it's certainly 20 years from the filing date. It was during the – from the priority date was during this brief. So does that affect the standard we should employ with respect to claim construction? Certainly here or upon remand, I believe that the court here or the board would be bound to be applying the Phillips standard because if our – You say here. You mean we should decide a case on a different ground than the PTO whose decision we're reviewing did? Well, the PTO couldn't be blamed during that time. The – perhaps the BRI, which we may agree or disagree on, the BRI was applied because the claims were – could be amended. Now we're at a stage where possibly the claims cannot be amended. And now that the patent may have expired during the briefing schedule. In your brief, you say that the standard of review is de novo. And I think that you mean by that that the claim construction, the standard of review for the claim construction is de novo. Not that we would review the board's decision on anticipation and obviousness de novo. Do I understand that correctly? Well, certainly there are – there's case law like the In Re Bookstaff and I believe Shire v. Watson is the same way. It's that if the anticipation or the obviousness determination is made based on faulty claim construction, then it would be reversed on those grounds. It wouldn't – you can't apply a deferential standard to anticipation or obviousness if the underlying claim construction itself is faulty. So in other words, if you read some of the Bookstaff – In Re Bookstaff case, I believe that it's cited in our brief, the moment it determines that the claim construction is faulty, then the anticipation – Sure. I mean, if the anticipation is based on an incorrect claim construction, then that might mean the decision is wrong. But I don't think that it changes the standard of review. In your obviousness arguments, you seem to only make two arguments here on appeal. One is that it would be misuse of the JP 634 to combine it with florin, and the other is that somehow it teaches a way. I don't see any other argument. You don't define the level of skill in the art. You don't refer to the level of skill in the art. You don't talk about why there wouldn't be any motivation to combine. I just see those two singular arguments. Is that correct? That is what we argued here, I guess. I mean, there are – obviously, we could talk about motivation, lack of motivation to combine, which we've done here today. It is actually threaded throughout our brief that there's no motivation to combine when you have a – when you have this history of prior to the 2012 request for reexamination, no one has brought up something like the 1982 JP 634 patent publication as being prior art. Then that also suggests that there is no motivation to combine, just the sheer numbers of examinations prior to this one. We're into your rebuttal time, Mr. Cunningham. You can use it or save it. Thank you. Mr. Helm. Thank you, Your Honor. May it please the Court. I'd like to just make a couple of points. I'm happy to talk about the claim construction or the anticipation rejections, but there are six other rejections that are obviousness rejections that do not involve the Japanese patent as the primary reference, so they don't raise the same issues of held by the human hand, which is a claim term in Claim 1, or adapted to be used by the human thumb. They just don't raise those same issues because they all cite remote control devices that are very similar to the ones disclosed in the patent edition. The other point I'd like to make is – Where are those? So one is Florin, and then I can tell you – let me cite you to the Board's opinion, which is on A6, which lists all eight of the rejections. And so Florin is one of the other references. The other ones we didn't discuss because they weren't discussed in the primary briefing in this case. So you're saying you're now pointing to those as alternative grounds to affirm? I didn't really see that in your brief. Oh, well, I think that we – in our briefing, we believe that the Board's decision as a whole should be affirmed, but the arguments raised in the briefing were only with respect to the JP634 reference. And there's the misuse and teaching away arguments, which we address in our briefing. But we think all of these arguments should be affirmed. I mean, all of these rejections should be affirmed. Let's just set aside the JP634 rejections for a minute. Absolutely. What claims are standing at that point? Well, the JP634 – actually, only Claim 1 was subject to a rejection based upon that reference alone. So if you're saying – if you're setting aside with respect to all of the rejections, you're saying JP634 is, for example, non-analysis art and so just can't be considered, then all of these rejections would fall because it's all part of those rejections. It is cited in all of those rejections. And just to be clear, the way that it got there was, I think as Judge Lori alluded to, in the reexamination, the reason why – I can't speak to why this reference wasn't found earlier or why it wasn't cited earlier, but in the most recent reexamination, their language was added about a cover plate. And I think if you look at the reexamination request, it's clear that the requester thought Florin in particular had all of the other elements that were missing or all of the other elements that were missing from those claims. And it was just that cover plate that was crucial. I can cite you to the proposed rejections if you need them. Are all the claims rejected on the combination of the Japanese reference and Florin? They are not. Claims 1, 4, 8, and 10 are the Japanese reference of Florin and the remainder are rejected upon other combinations. But the Japanese reference is one of the references. The Japanese reference is part of all of them. But it's not used for the purpose of disclosing remote control and those other rejections. Is it your argument that if we affirm the Board on 103, the 102 rejections are moot? That's right. Let me ask you. Absolutely. This is a not-so-hypothetical hypothetical? Yes. What if I think that the claim constructions that the Board employed were ridiculous and that there was nothing reasonable about those BRI constructions? Where does that leave you on the 103? Well, we're still, my view is, I'm happy to engage upon whether or not they're reasonable or not. But my view is, just to sidestep the whole situation, is that if that's what you conclude and it should be a narrower construction, for example, something that looks like remote control, that is all supplied by the other references that are cited, not by JP634. So is it your view that we could just accept the appellant's proposed construction but still conclude that the 103 rejection could be affirmed? Yes, absolutely. And the reason for that is because if you look at the rejections that were adopted by the examiner, the JP634 is not cited for the handheld body or the, I think the language in Claim 1 is held by the human hand. And I think that there's a difference. Claim 17 is the only one that has the handheld language. All the other claims are, Claim 1 is held by a human hand. Is it your position that it's because it's flooring is the primary reference, for example, in view of JP634? So flooring is the reference that provides the handheld or the cable adapted to be held? Exactly. And also the thumb switch adapted to be manipulated by the thumb? Exactly. And again, I'm happy to discuss why I think that the JP634 might also disclose a thumb switch. But at the end of the day, we don't need that because with the obviousness rejections, the obviousness rejections that are not over the JP634 alone, because those rejections all have remote control devices that have what, according to what is disclosed in patent specification, look like a handheld body and a thumb switch. Well, what is the motivation to combine a tethered mouse-like unit into flooring? Absolutely. So what the findings of the board were that the, let me just, what the board found was that JP634 discloses that its particular design, the particular design of the plate with the annular switch underneath had advantages and it used, that was what it based the motivation to combine upon. And I can cite you further to the record. One second. Excuse me. Excuse my tardiness here. Up to a point. Is it A1726? Yes, yes. It's the examiner adopted 1719 to 1726. Yes, this is the claim. And thank you very much, Your Honor. And so what the JP634 says, its movement is carried out easily and quickly with a single key and the operability is enhanced by providing a crystal accurate key. So it says that there are advantages to this particular layout, which is the motivation to combine. Is it the view of the patent office that when you have a limited number of means to perform a certain function, to communicate at a distance, at a remote distance with a computer, that there is inherently a motivation to experiment and combine them? Well, I think that's, I think that, I don't know if there's inherently a motivation to combine, but it certainly does fall within the framework of KSR where it says if there's a limited number of problem and a limited number of solutions to a problem, that certainly suggests that it might be obvious. What's the level of skill in the art? I don't know if there's any express finding of level and skill in the art. I don't know if it was disputed. It always drives me crazy. Yeah, it is. It's one of those things that, certainly in a district court, you might expect somebody to have given testimony upon that, but I don't think, as far as I know, that there's no express finding about the level of skill in the art. I think it's disputed. Even assuming your claim construction is correct, or the board's claim construction was correct about the capable of, as opposed to adapted to, how can it be that that JP634 reference provides both hand-held and thumb-actuated at the same time? I'm not sure I see how that's physically possible. It says that it has to be, let's assume the claim construction is correct again, it says capable of being held by the hand, capable of being actuated by the thumb. I don't think my hand could both hold it and actuate by the thumb. So let me make two points. The first is that, with respect to JP634, it's only Claim 1, and that claim is held by the human hand. So that's not hand-held. That's in Claim 17. Sure, so even if you laid your hand on top, how is your thumb going to get on that switch? Oh, well, so I think there are a number of devices that kind of have a similar type of configuration, maybe more modern devices than 1995. An iPod might come to mind, where you use your thumb to move the iPod if it's on a desk, even if it were on a desk, as opposed to being held in your hand. But that's the type of switch I think is disclosed. How is your hand holding it then? Your hand isn't laying on top of it. You've got your thumb manipulating it. Yes, and so I think what the Board said was that held by the human hand included devices that were grasped by the human hand. But you're not grasping it when you're using the thumb to manipulate the switch. I think what they were saying is that you would put your hand upon, and I think this is what the JP-634 discloses, is that you place your hand upon the top of the device. And I think the Board said that this falls within the scope of the term held by the human hand. And so, again, not to sound like a broken record, but there are these other references that disclose what by any construction is a handheld device or a device that's held by the human hand. So we don't actually need this. But with respect to the JP-634... Well, we can't look at another reference that the Board didn't rely upon for this particular claim, can we? No, but certainly the Board relied upon the Florin reference and the other references that were cited in its opinion. But not for this claim? For Claim 1, they did, yes. Yes, they did. Absolutely. There are a number of rejections made over Claim 1. I say that with certainty, but I'm going to just double-check, because, yes, yes. On page A6, the Board, in the third rejection, this is the rejection over Florin, is for Claims 1, 4, 8, and 10. So why isn't... I don't understand why there's nothing in your brief that points to this fact and says, alternatively, we would ask the Court to affirm on these alternative grounds. I'm sorry, Your Honor. I thought we had put something... I thought we had put that it was under any particular... So it's on page 20 in our brief. The Board correctly concluded that Claims 1, 4, 7, 10, and 17 are obvious. And then... And we cite Florin on page 21. We have a picture of the Florin remote control on page 21. Right, but you don't cite anything... Florin in combination with anything other than JP634. So I guess I'm not sure how you can rely on that now. I thought... Well, honestly, Your Honor, when we were briefing this, the only issues that were raised in the appellant's brief had to do with whether or not... whether or not this JP634 was a handheld device or had a thumb switch. And we were just trying... We did not address the remainder of the... the remainder of the rejection. So they're not addressed in the opening brief. They're waived. I guess it would have been... The point is that it would have been helpful had you done so. Yeah, well, I'm sorry, Your Honor. I thought... I'm sorry, Your Honor. Certainly next time we will... We're happy to include more information in our briefing. You also weren't dealing with a very clear Board opinion. That's true, Your Honor. The Board opinion has... It has its strengths and weaknesses. To be sure. Are there any other questions? Again, I do just want to point out that Claim 1, it does have different language, held by the human hand, which is distinct from Claim 17, which is handheld. And frankly, even in 1995 or 96, depending on which date you give to these claims, that actually may have a substantially different meaning than what we think of today. But if we think that adapted to be held by the hand is not as broad as capable, being held, then don't they have pretty much the same meaning? Well, I actually don't think that's what the Board said. The Board did say capable, but what they more specifically said was that this specific structure disclosed falls within the scope of it. Not just that... I'm not even sure they gave a specific construction, but they more construed the claim and said, we think that this falls within the scope of the claim. Yeah, that part's heavy lifting for you to try to support that, I think. Yeah, we defend the Board's decisions as best we can. Thank you, Mr. Helms. Thank you very much, Your Honor. Mr. Cunningham has two and a half minutes left. Thank you, Your Honor. I'd like to just clarify a few points. The first point is, certainly the adjective forms of the thumb switch and the handheld device are more concrete, not less concrete, in my opinion, than the adapted to version of this claim limitation. That 17 has handheld wouldn't mean for it to be any broader than Claim 1 that has the adapted to be held by the human hand. They both make concrete, as does the specification, that it's a handheld device, not something that's merely capable of being held by the hand. The thumb switch also, in combination with the handheld device, does describe this holding it in your hand. That's the whole point of this. The correction I wanted to make, now that I went back to the desk, is that I cited the Typhoon Touch case several times. Upon reading that case in preparation for today, I'd rather cite the Aspects Eyewear case that talks equally about, or better actually, about a natural claim construction adapted to. That case says you look to the specification to determine the breadth of adapted to, whether it is a configured to interpretation or whether it should be capable of connotation. Here, the specification is very clear. This is to be held by the hand. If we agree with your claim constructions and say we will just, would we have to remand for the board to reconsider its obviousness determination in light of your claim constructions, or could we simply adopt your claim constructions and look at whether or not the obviousness rejection is supportable under that standard? I would say that you should adopt our claim construction and apply that in the obviousness issue. I think still, when you look at these two prior references, the Florin and the JP634, I don't think that you get an obviousness that renders our own client's claims obvious. You're saying we needn't remand if we adopt your claim construction. We can evaluate the rejection. I agree, Your Honor. You should probably consider whether on remand it would end up being under the Phillips regime instead of the BRI regime. Just let me ask you, why is it that you don't even cite Florin or refer to Florin in your reply? Your Honor, one of the things I wanted to mention here is the hardship that the BRI standard puts on patent owners. One of this is that their entire... First off, I guess the Board's decision isn't all that clear. It throws JP634 into everything. It talks about it being the principal patent from which other things are added to it, rather than to say Florin is the principal to which JP634 fills in the gaps. We spent so much time trying to explain why the claim interpretation is not even reasonable, even under BRI, we have so little time to be talking about the obviousness side of the rejection. For the most part, that's what's happening. You're mostly trying to say, look, there's a wrong claim construction. We spent so much time talking about that. Thank you, Mr. Cunningham. We'll take your case under revise now.